IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | |
|---|---|
| CELLULAR COMMUNICATIONS EQUIPMENT LLC,<br><br>          Plaintiff,<br><br>v.<br><br>LG ELECTRONICS, INC., ET AL.,<br><br>          Defendants. | **CIVIL ACTION NO. 6:14-cv-982-KNM**<br>**LEAD CASE** |

# SONY MOBILE'S OPPOSITION TO PLAINTIFF'S MOTION TO DISMISS BREACH OF CONTRACT COUNTERCLAIMS BY CERTAIN MANUFACTURER DEFENDANTS

## **TABLE OF CONTENTS**

LEGAL STANDARD ........................................................................................................................ 1

STATEMENT OF THE FACTS ...................................................................................................... 2

ARGUMENT .................................................................................................................................... 3

I.  SONY MOBILE'S BREACH OF CONTRACT COUNTERCLAIM IS ADEQUATELY PLEADED ON ITS FACE ........................................................................ 3

    A.  Licensing Declarations Made by CCE's Predecessors-in-Interest Constitute Express or Implied Contracts Between CCE and Sony Mobile ..................................... 4

    B.  CCE is Bound by the Licensing Declarations of Its Predecessors ................................. 6

    C.  Performance or Tendered Performance Has Been Adequately Pleaded ........................ 7

II.  THE DOCUMENTS REFERENCED IN THE COMPLAINT PROVIDE ADDITIONAL FACTUAL SUPPORT FOR THE BREACH OF CONTRACT COUNTERCLAIM ........................................................................................................... 9

CONCLUSION ................................................................................................................................. 9

## TABLE OF CONTENTS

**CASES**

*Apple Inc. v. Samsung Elecs. Co.*,
  Case No. 11-CV-01846, 2012 U.S. Dist. LEXIS 67102 (N.D. Cal. May 14, 2012) .............. 6, 8

*Apple, Inc. v. Motorola Mobility, Inc.*,
  Case No. 11-CV-178, 2011 U.S. Dist. LEXIS 72745 (W.D. Wis. June 7, 2011) ...................... 6

*Apple, Inc. v. Motorola, Inc.*,
  869 F. Supp. 2d 901 (N.D. Ill. 2012) ................................................................................... 8

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ............................................................................................... 1, 4, 8, 9

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 554 (2007) .......................................................................................................... 1

*BMC Software, Inc. v. ServiceNow, Inc.*,
  Case No. 2:14-CV-903, 2015 U.S. Dist. LEXIS 64366 (E.D. Tex. May 18, 2015) ....... 4, 6, 8, 9

*Bowlby v. City of Aberdeen*,
  681 F.3d 215 (5th Cir. 2012) ............................................................................................. 1

*Castillo v. Ocwen Loan Servicing, L.L.C.*,
  539 Fed. App'x 621 (5th Cir. Tex. 2013) ........................................................................... 6

*Datatreasury Corp. v. Wells Fargo & Co.*,
  522 F.3d 1368 (Fed. Cir. 2008). ........................................................................................ 7

*Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*,
  594 F.3d 383 (5th Cir. 2010) ......................................................................................... 2, 9

*Microsoft Corp. v. Motorola, Inc.*,
  864 F. Supp. 2d 1023 (W.D. Wash. 2012), *aff'd*, 795 F.3d 1024 (9th Cir. 2015) ................... 6, 8

*O'Shea v. Parkey*,
  No. 4:12CV265, 2014 WL 494905 (E.D. Tex. Feb. 4, 2014) ................................................. 1

*Realtek Semiconductor Corp. v. LSI Corp.*,
  946 F. Supp. 2d 998 (N.D. Cal. 2013) ...................................................................... 5, 7, 8

*TQP Dev., LLC v. Callidus Software Inc.*,
  No. 2:12-CV-799-JRG-RSP, 2013 WL 4826011 (E.D. Tex. Sept. 9, 2013) ............................ 1

*United States v. Bollinger Shipyards, Inc.*,
  775 F.3d 255 (5th Cir. 2014) ............................................................................................ 6

**OTHER AUTHORITIES**

United States Department of Justice and United States Patent & Trademark Office, "Policy Statement on Remedies for Standards-Essential Patents Subject to Voluntary F/RAND Commitments" (January 8, 2013) .............................................................................................. 6

**RULES**

Fed. R. Civ. P. 12(b)(6) ................................................................................................... 1, 2, 4

Fed. R. Civ. P. 8(a)(2) ............................................................................................................ 1

Plaintiff Cellular Communications Equipment LLC ("CCE"), after serving a threadbare amended complaint with formulaic recitations of claim language, now argues in a three-page motion to dismiss that the detailed breach of contract counterclaim of Defendant Sony Mobile Communications (USA), Inc. ("Sony Mobile") is somehow deficient. Sony Mobile's counterclaim is grounded in the express commitment of CCE and/or its predecessors-in-interest to license the patents-in-suit on FRAND terms pursuant to the very same standards around which CCE has framed its infringement contentions. Sony Mobile's counterclaim details the factual and legal basis for the contractual commitment as well as the bases for Sony Mobile's allegations of breach. It passes muster under all relevant case law, including the *Twombly* pleading standard. CCE's Motion to Dismiss Breach of Contract Counterclaims by Certain Manufacturer Defendants (Dkt. No. 169 (hereafter, "Mot.")) should therefore be denied.

## LEGAL STANDARD

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a pleading "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007)). A court "must assume that all well-pleaded facts are true, and view those facts in the light most favorable to the plaintiff." *TQP Dev., LLC v. Callidus Software Inc.*, No. 2:12-CV-799-JRG-RSP, 2013 WL 4826011, at *1 (E.D. Tex. Sept. 9, 2013) (citing *Bowlby v. City of Aberdeen,* 681 F.3d 215, 218 (5th Cir. 2012)). A party does not need to present "detailed factual allegations," though mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" are insufficient to meet the pleading standard. *Iqbal*, 556 U.S. at 678. A party "meets this standard when it 'pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *O'Shea v. Parkey*, No. 4:12-CV-265, 2014 WL 494905, at *2 (E.D. Tex. Feb. 4, 2014) (quoting *Iqbal,* 556 U.S. at 678).

When applying this pleading standard, the Court considers "the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint."  *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).  In reviewing these documents in response to a Rule 12(b)(6) motion to dismiss, "[t]he court's task is to determine whether the plaintiff has stated a legally cognizable claim that is plausible, not to evaluate the plaintiff's likelihood of success."  *Id.*

## STATEMENT OF THE FACTS

On December 19, 2014,[1] CCE filed its Original Complaint for Patent Infringement against Sony Mobile.  (Civ. Action No. 6:14-cv-983, Dkt No. 1).  CCE alleged that Sony Mobile infringed U.S. Patent Nos. 8,385,966 ("the '966 Patent); 8,848,556 ("the '556 Patent); and 8,868,060 ("the '060 Patent").  CCE also alleged that all three asserted patents were "standard essential" patents (collectively "the Alleged Standard Essential Patents") that had been disclosed to the 3rd Generation Partnership Project (or "3GPP") via the European Telecommunications Standards Institute (or "ETSI"), "an organizational member of 3GPP."  (Civ. Action No. 6:14-cv-983, Dkt No. 1 at ¶¶ 21, 35, 46).  Further, CCE alleged that Sony Mobile was a 3GPP "member organization" or was "affiliated with a 3GPP member organization."  (*Id.*)

On April 16, 2015, CCE filed its First Amended Complaint for Patent Infringement.  (Dkt No. 29).[2]  The First Amended Complaint continued to assert all three Alleged Standard Essential Patents and to maintain that they were "standard essential."  (*Id.* at ¶¶ 20, 35, 46).  CCE also continued to allege that Sony Mobile was a 3GPP member organization or was "affiliated with a 3GPP member organization."  (*Id.*)

---

[1]  CCE alleges (Mot. at 2) that Sony Mobile has "participated in this lawsuit from as early as 2013" and had "years" to formulate counterclaims.  These statements are wrong on their face.  Sony Mobile has nothing to do with the cases that CCE filed in 2013.  Those cases concern entirely separate defendants and patents.

[2]  All subsequent citations to docket numbers refer to the lead 982 case.

Sony Mobile answered the First Amended Complaint on November 13, 2015. (Dkt. No. 149.) In its accompanying counterclaims, Sony Mobile alleged that "[a]s a member of ETSI, and to comply with ETSI's Intellectual Property Rights ('IPR') Policy, CCE and/or its predecessors represented to ETSI, ETSI members, and third parties that it would grant irrevocable licenses to the Alleged Standard Essential Patents on fair, reasonable, and non-discriminatory ('FRAND') terms and conditions." (*Id*. at ¶ 38.) Sony Mobile also alleged that "CCE did not make an offer to license the Alleged Standard Essential Patents on FRAND terms to Sony Mobile prior to filing its Complaint for patent infringement." (*Id.* at ¶ 42.) Accordingly, Sony Mobile asserted a breach of contract counterclaim based on ETSI's IPR Policy and CCE's (or its predecessors') ETSI membership and activities, including any FRAND licensing declarations made to ETSI to comply with ETSI's IPR Policy. (*Id.* at ¶¶ 36-46.)

On December 7, 2015, CCE moved to dismiss Sony Mobile's breach of contract counterclaim. (Dkt. No. 169.)

**ARGUMENT**

**I.    SONY MOBILE'S BREACH OF CONTRACT COUNTERCLAIM IS ADEQUATELY PLEADED ON ITS FACE**

CCE advances two arguments for dismissing Sony Mobile's counterclaim.

First, CCE maintains that Sony Mobile fails to identify an "express and/or implied contract" between Sony Mobile and CCE. (Mot. at 3). CCE also alleges that even if such an express or implied contract existed between Sony Mobile and one of CCE's predecessors, Sony Mobile fails to allege "why CCE is a proper party to sue" for breach of this contract. (*Id*.) However, CCE cherry picks *one sentence* from Sony Mobile's pleading while ignoring the other *nine paragraphs*.

Second, CCE asserts that Sony Mobile's counterclaim is deficient because it does not plead Sony Mobile's "performance or tendered performance," which according to CCE is a required element of a breach of contract claim. (Mot. at 3). CCE's arguments are contrary to established law concerning FRAND obligations.

When read as a whole (as opposed to CCE's misleading excerpt), Sony Mobile's breach of contract counterclaim includes more than sufficient factual detail to state a plausible – indeed, compelling – claim for relief. *Iqbal*, 556 U.S. at 678; *see also BMC Software, Inc. v. ServiceNow, Inc.*, Case No. 2:14-CV-903, 2015 U.S. Dist. LEXIS 64366, at *8-10 (E.D. Tex. May 18, 2015) (denying three motions to dismiss under Rule 12(b)(6) because the pleadings were "sufficiently plausible").

### A. Licensing Declarations Made by CCE's Predecessors-in-Interest Constitute Express or Implied Contracts Between CCE and Sony Mobile

CCE's motion to dismiss Sony Mobile's breach of contract counterclaim turns on ***one sentence*** that CCE isolates and inexplicably characterizes as Sony Mobile's purported "best attempt" at pleading the counterclaim. (Mot. at 2-3). Yet Sony Mobile provided ***ten paragraphs*** of detailed factual allegations in its pleading supporting this counterclaim. (Dkt. No. 149 at ¶¶ 37-46.)

Sony Mobile pleaded that the contract in question arises from the ETSI IPR Policy and reflects FRAND licensing commitments that CCE and/or its predecessors-in-interest made to ETSI and its members regarding the Alleged Standard Essential Patents.[3] More specifically, Sony Mobile also pleaded that the licensing declarations "represented to ETSI, ETSI members, and third parties that it would grant irrevocable licenses to the Alleged Standard Essential Patents on fair, reasonable, and non-discriminatory ('FRAND') terms and conditions" with respect to the very same ETSI standards that are at the heart of CCE's infringement contentions. (*Id.* at ¶ 38.)

---

[3] As described above, CCE asserts in its own pleadings that all three of the patents CCE asserts against Sony Mobile are "standard essential patents" disclosed to 3GPP and its member organizations via ETSI. (Dkt. No. 29 at ¶¶ 20, 35, 46) In fact, CCE relies on these disclosures as evidence that Sony Mobile allegedly had actual knowledge of these patents. (*Id.*) As the licensing declarations produced in this case by CCE confirm, each of these patents was expressly the subject of a FRAND licensing commitment made by CCE's predecessor to ETSI in accordance with the ETSI IPR Policy. Ex. A (June 21, 2011 Declaration) ('966 Patent); Ex. B (Oct. 26, 2012 Declaration) ('556 Patent); Ex. C (Dec. 14, 2010 Declaration) ('060 Patent).

Sony Mobile—as an affiliate of an ETSI member and/or third party—is an express or implied party[4] to the irrevocable licensing declarations, which, as Sony Mobile pleaded, "are permanent, and cannot be revoked by sale of the patent." (*Id.* at ¶ 41.) CCE breached those obligations by failing to "make an offer to license the Alleged Standard Essential Patents on FRAND terms to Sony Mobile prior to filing its Complaint for patent infringement" and by seeking more than a FRAND royalty in its prayer for relief. (*Id.* at ¶¶ 42-44.)

CCE ignores these details of the contractual obligations and instead cites only a single overview sentence. Sony Mobile in fact alleged in detail:

> CCE and/or its predecessors ETSI membership and activities, including the ***declarations it made to comply with ETSI's IPR policy*** for the Alleged Standard Essential Patents, ***created an express and/or implied contract with ETSI and/or ETSI members*** including an agreement that CCE and/or its predecessors would license those patents on FRAND terms and conditions.

(*Id.* at ¶ 39 (emphasis added).) Further, Sony Mobile alleged that "[u]nder ETSI's IPR Policy, third parties that are not ETSI members also have the right to be granted licenses under those patents on FRAND terms and conditions. (Id. at ¶ 40.)

Assuming the foregoing assertions are true—as the Court must on a motion to dismiss—Sony Mobile has sufficiently pleaded that a valid express and/or implied contract exists between CCE and Sony Mobile through the licensing declarations submitted by CCE (or its predecessors-in-interest) concerning the Alleged Standard Essential Patents and that these declarations obligate CCE to provide Sony Mobile a FRAND license to the Alleged Standard Essential Patents. Several district and circuit courts have found that similar FRAND licensing declarations create contractual obligations. *E.g., Realtek Semiconductor Corp. v. LSI Corp.*, 946 F. Supp. 2d 998, 1005 (N.D. Cal. 2013) ("There is no dispute in this case that defendants entered into a binding contract with the [standards-setting organization] to license their declared standard-essential patents … on RAND terms, and that Realtek is a third party beneficiary to that

---

[4] Even if Sony Mobile were not an express party to the licensing declarations, it was at least an intended third-party beneficiary to those declarations. *See* § I(C), *infra*.

- 5 -

contract."); *Apple Inc. v. Samsung Elecs. Co.*, Case No. 11-CV-01846, 2012 U.S. Dist. LEXIS 67102 at *40-44 (N.D. Cal. May 14, 2012); *Microsoft Corp. v. Motorola, Inc.,* 864 F. Supp. 2d 1023, 1036-39 (W.D. Wash. 2012), *aff'd,* 795 F.3d 1024 (9th Cir. 2015); *Apple, Inc. v. Motorola Mobility, Inc.*, Case No. 11-CV-178, 2011 U.S. Dist. LEXIS 72745 at *22-33 (W.D. Wis. June 7, 2011); *see also* United States Department of Justice and United States Patent & Trademark Office, "Policy Statement on Remedies for Standards-Essential Patents Subject to Voluntary F/RAND Commitments" (January 8, 2013) at 7, n.14 (Ex. D).

The sole case (*Castillo v. Ocwen Loan Servicing*) that CCE cites granting a motion to dismiss a contract claim is inapposite and indeed has nothing to do with licensing obligations. In *Castillo*, the plaintiff relied on the doctrine of partial performance of a contract that did not satisfy the statute of frauds and was hence invalid. 539 F. App'x 621, 624 (5th Cir. 2013). The *Castillo* court merely reiterated that the existence of a valid contract is a required element to any breach of contract claim. Here, Sony Mobile has pleaded sufficient facts to allow this Court to draw the "reasonable inference" that CCE has plausibly breached its obligation—by "more than a sheer possibility"—to license the Alleged Standard Essential Patents on FRAND terms. *BMC Software*, 2015 U.S. Dist. LEXIS 64366, at *2-3 (quoting *United States v. Bollinger Shipyards, Inc.*, 775 F.3d 255, 260 (5th Cir. 2014)).

### B. CCE is Bound by the Licensing Declarations of Its Predecessors

Sony Mobile also adequately pleaded the factual basis indicating why CCE—the purported current owner of the Alleged Standard Essential Patents—is the proper party to sue for breaching this contractual commitment. As the counterclaim emphasizes, "[w]hen a patent is declared as a Standard Essential Patent, the commitments made with regard to the declared patent are permanent, and cannot be revoked by sale of the patent." (Dkt. No. 149 at ¶ 41). In other words, the contractual obligations associated with the licensing declarations bind all successors-in-interest and current owners of the Alleged Standard Essential Patents.

CCE, as the purported current owner of the Alleged Standard Essential Patents, is therefore also obligated to license these patents on FRAND terms because assignees "take[ ] a patent subject to the legal encumbrances thereon." *Datatreasury Corp. v. Wells Fargo & Co.*, 522 F.3d 1368, 1372–72 (Fed. Cir. 2008). Sony Mobile has therefore pleaded sufficient facts to state a plausible claim for relief against CCE, as the successor-in-interest and purported current owner of the Alleged Standard Essential Patents.

### C. Performance or Tendered Performance Has Been Adequately Pleaded

CCE's argument regarding Sony Mobile's failure to plead "performance or tendered performance" (Mot. at 3) also misses the mark. Lacking any supporting case law, CCE baldly asserts that Sony Mobile "must allege the tender of [its] willingness to license CCE patents on FRAND terms." CCE misunderstands the nature of the underlying licensing declarations. As explained in Sony Mobile's counterclaim, the declarations contain promises that "CCE and/or its predecessors would license [the alleged standard essential] patents on FRAND terms and conditions" to both ETSI members and non-members alike. (Dkt. No. 149 at ¶¶ 39-41.) Sony Mobile is therefore entitled to FRAND licenses for the Alleged Standard Essential Patents. CCE breached its commitment at least when it filed this lawsuit without even offering a FRAND license and sought damages in excess of FRAND terms. *See, e.g., Realtek*, 946 F. Supp. 2d at 1005 (instigating an ITC Section 337 action prior to offering a FRAND license is a breach of a FRAND licensing declaration). Indeed, as CCE's own complaint acknowledges, Sony Mobile is "affiliated with a 3GPP member organization." (Dkt. No. 29 at ¶¶ 20, 35, 46). This affiliation constitutes the requisite performance under the contract. All third parties, including those who implement the ETSI technical specification or standard under which the Alleged Standard Essential Patents are declared essential, are also entitled to a FRAND license.

As an intended third-party beneficiary to the licensing declarations made to ETSI, Sony Mobile is also eligible to sue to enforce the declarations. *See Apple Inc. v. Samsung Elecs. Co.*, 2012 U.S. Dist. LEXIS 67102 at *41-42 (third party may sue to enforce ETSI licensing declarations under a third-party beneficiary contract theory); *Realtek*, 946 F. Supp. 2d at 1005 (same as applied to IEEE licensing declarations). Under this theory, ETSI tendered performance under the contract when it accepted the declarations under the terms of the ETSI IPR Policy. *See Apple, Inc. v. Motorola, Inc.,* 869 F. Supp. 2d 901, 914 (N.D. Ill. 2012) (standard essential patent owner "agreed to license its standards-essential patents on FRAND terms as a *quid pro quo* for their being declared essential to the standard").

Sony Mobile has thus adequately pleaded "performance or tendered performance" under both a third-party beneficiary and an express or implied contract theory.

Contrary to CCE's unsupported assertions, there is no requirement to negotiate or ask for a FRAND license before a breach of a FRAND commitment occurs. *See Microsoft Corp. v. Motorola, Inc*., 864 F. Supp. 2d at 1035 (negotiation of a FRAND license is not a condition precedent to a patent owner's FRAND obligations); *see also Apple, Inc. v. Motorola, Inc.,* 869 F. Supp. 2d at 914 (agreements to license on FRAND terms are not "conditioned [] on prospective licensees' making counteroffers in license negotiations").

Instead, CCE breached its FRAND obligations by filing the present lawsuit *without first offering* Sony Mobile the FRAND license to which it was entitled. *Realtek*, 946 F. Supp. 2d at 1005. Sony Mobile's counterclaim makes this clear: "CCE did not make an offer to license the Alleged Standard Essential Patents on FRAND terms to Sony Mobile before filing its Complaint for patent infringement …. CCE's conduct…constitutes a breach of its contractual obligations to ETSI and/or ETSI members and deprives third parties of their right to be granted FRAND licenses under the Alleged Standard Essential Patents." (Dkt. No. 149 at ¶¶ 42, 44.) Sony Mobile's breach of contract counterclaim therefore includes more than sufficient factual detail to state a "sufficiently plausible" claim for breach of contract. *Iqbal*, 556 U.S. at 678; *BMC Software*, 2015 U.S. Dist. LEXIS 64366, at *8-10.

## II. THE DOCUMENTS REFERENCED IN THE COMPLAINT PROVIDE ADDITIONAL FACTUAL SUPPORT FOR THE BREACH OF CONTRACT COUNTERCLAIM

Given that Sony Mobile's counterclaim referenced the ETSI IPR Policy and licensing declarations, these documents must also be considered when assessing the sufficiency of Sony Mobile's pleading. *Lone Star Fund*, 594 F.3d at 387. These documents provide further factual support for Sony Mobile's breach of contract counterclaim.

Each of the licensing declarations made by Nokia Siemens Networks (CCE's predecessor-in-interest) states that the declarant is "prepared to grant irrevocable licenses…on terms and conditions which are in accordance with Clause 6.1 of the ETSI IPR Policy." (Ex. A at 1; Ex B at 1; Ex. C at 2.) Clause 6.1 of the ETSI IPR Policy explains that when a patent is identified to ETSI as "essential," the patent owner will be immediately requested to give "an irrevocable undertaking in writing that it is prepared to grant irrevocable licenses on fair, reasonable and non-discriminatory ('FRAND') terms and conditions." (Ex. E at § 6.1.) ETSI's IPR Policy also requires that "FRAND licensing undertakings made pursuant to Clause 6 shall be interpreted as *encumbrances that bind all successors-in-interest*," like CCE. (*Id.* at § 6.1bis (emphasis added).) On their face, therefore, the ETSI IPR Policy and licensing declarations can be reasonably interpreted to create an express and/or implied contract between CCE (i.e., the successor-in-interest to the Alleged Standard Essential Patents), and Sony Mobile (i.e., affiliated with an ETSI member). (*See also id.* at § 12 (explaining that rights and obligations under the ETSI IPR Policy are of "a *contractual nature*").) These documents, along with the pleadings contained within Sony Mobile's counterclaim, include more than sufficient factual detail to state a "sufficiently plausible" claim for relief for breach of contract. *Iqbal*, 556 U.S. at 678; *BMC Software*, 2015 U.S. Dist. LEXIS 64366, at *8-10.

## CONCLUSION

For the foregoing reasons, CCE's Motion to Dismiss should be denied.

- 9 -

Dated: December 24, 2015                    Respectfully submitted by,

*/s/ Michael N. Rader*
Michael N. Rader *(admitted pro hac vice)*
Charles T. Steenburg *(admitted pro hac vice)*
Chelsea A. Loughran *(admitted pro hac vice)*
WOLF, GREENFIELD & SACKS, P.C.
600 Atlantic Avenue
Boston, MA 02210
Tel: (617) 646-8000
Fax: (617) 646-8646
mrader@wolfgreenfield.com
csteenburg@wolfgreenfield.com
chelsea.loughran@wolfgreenfield.com

Richard L. Wynne
Texas State Bar No. 24003214
THOMPSON & KNIGHT LLP
One Arts Plaza
1722 Routh St., Suite 1500
Dallas, TX 75201
Telephone: 214.969.1386
Fax: 214.880.3267

**COUNSEL FOR DEFENDANT SONY MOBILE COMMUNICATIONS (USA) INC.**

## **CERTIFICATE OF SERVICE**

      I hereby certify that a true and correct copy of the foregoing document was filed electronically in compliance with Local Rule CV-5 on this December 24, 2015.  As of this date all counsel of record have consented to electronic service and are being served with a copy of this document through the Court's CM/ECF system under Local Rule CV-5(a)(3)(A).

                                  /s/ Michael N. Rader  
                                  Michael N. Rader